**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
**STEPHANIE A. GALLAGHER**
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

November 18, 2016

LETTER TO COUNSEL

> RE:    *Judith O'Brien v. Carolyn Colvin;*
>          Civil No. SAG-16-114

Dear Counsel:

On January 11, 2016, Plaintiff Judith O'Brien petitioned this Court to review the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits. (ECF No. 1).  I have considered the parties' cross-motions for summary judgment.  (ECF Nos. 13, 16).  I find that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2016).  This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  Under that standard, I will deny Plaintiff's motion, grant the Commissioner's motion, and affirm the Commissioner's judgment pursuant to sentence four of 42 U.S.C. § 405(g).  This letter explains my rationale.

Ms. O'Brien filed a claim for Disability Insurance Benefits ("DIB") on April 29, 2012. (Tr. 13).  She alleged a disability onset date of March 31, 2005.  *Id.*  Her claim was denied initially and on reconsideration.  (Tr. 81, 92).  A hearing was held on June 11, 2014, before an Administrative Law Judge ("ALJ").  (Tr. 13, 42).  Following the hearing, the ALJ determined that Ms. O'Brien was not disabled within the meaning of the Social Security Act during the relevant time frame.  (Tr. 10-30).  The Appeals Council denied Ms. O'Brien's request for review, (Tr. 1-3), so the ALJ's decision constitutes the final, reviewable decision of the Agency.

The ALJ found that Ms. O'Brien suffered from the severe impairments of spine disorder, intracranial injury, and carpal tunnel syndrome.  (Tr. 16).  Despite these impairments, the ALJ determined that Ms. O'Brien retained the residual functional capacity ("RFC") "to perform light work as defined in 20 CFR 404.1567(b) except she could never climb ladders, ropes, or scaffolds but can perform all other postural activities occasionally."  (Tr. 20).  After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. O'Brien could perform past relevant work and that, therefore, she was not disabled.  (Tr. 29-30).

Ms. O'Brien raises two primary arguments on appeal: (1) that the ALJ erred by failing to include limitations in the RFC relating to the severe impairments of carpal tunnel syndrome and intracranial injury; (2) and that the ALJ failed to make a function-by-function assessment of her RFC consistent with SSR 96-8p.  Pl.'s Mot. 5.  Both arguments lack merit and are addressed below.

O'Brien v. Colvin
Civil No. SAG-16-114
November 18, 2016
Page 2

I.      **Limitations from Severe Impairments**

Ms. O'Brien argues that the ALJ failed to consider the limitations stemming from her intracranial injury and carpal tunnel syndrome as part of the RFC assessment and, as such, the RFC findings are unsupported by substantial evidence. Pl.'s Mot. 6-9. I disagree. "The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence..." SSR 96-8p, 1996 WL 374184, at *7. "The finding that an individual's impairment(s) could reasonably be expected to produce the alleged symptom(s) does not involve a determination as to the intensity, persistence, or functionally limiting effects of the symptom(s). However, once the requisite relationship between the medically determinable impairment(s) and the alleged symptom(s) is established, the intensity, persistence, and limiting effects of the symptom(s) must be considered along with the objective medical and other evidence in determining whether the impairment or combination of impairments is severe." SSR 96-3p, 1996 WL 374181, at *2. Moreover, there is no requirement that every severe impairment correlate with a particular restriction in the RFC assessment. *See Carrier v. Astrue*, 2013 WL 136423, at *1 (D. Md. Jan. 9, 2013).

Here, the ALJ provided a narrative discussion of the medical and non-medical evidence relating to Ms. O'Brien's intracranial injury and carpal tunnel syndrome. *See* (Tr. 20-29). The ALJ noted Ms. O'Brien's hearing testimony regarding her intracranial injury, including needing to wear sunglasses throughout the hearing due to the room's bright lights, reporting "numbness on the top of her head, as if someone had injected [it] with Novocaine," and needing to "lie down every day for three hours because of neck and head pain." (Tr. 21). The ALJ also noted Ms. O'Brien's hearing testimony that her carpal tunnel syndrome causes her right hand to "'seize[] up'" and results in "pain that radiates up to her middle finger" and leads to her dropping groceries, having "trouble opening jars and twisting things with her right hand," and reporting an inability to "lift more than five pounds." *Id.* However, the ALJ found Ms. O'Brien not entirely credible regarding the intensity, persistence, and limiting effects of the symptoms relating to her impairments to the extent her claims were unsupported by the objective medical and other evidence. *Id.*

Thereafter, the ALJ provided a thorough and detailed discussion of the evidence in the record relating to the limiting effects of Ms. O'Brien's severe impairments. The ALJ's opinion is replete with references to the record in support of her findings. *See* (Tr. 20-29). Specifically, as relevant to intracranial injury and carpal tunnel syndrome, Ms. O'Brien reported performing "'normal activities' of daily living" and babysitting her infant grandson daily for a 22 month period after the alleged onset date. (Tr. 22-23) (citing Exhibit 5F at pp. 2, 7-57 and Exhibit 6F at p. 13). Notably, the ALJ remarked that, despite an alleged March 31, 2005 disability onset date, "[t]he record also shows that [Ms. O'Brien's] conditions did not cause her to make changes in her work activity until February 4, 2006, and … did not become severe enough to keep her from working until April 24, 2006 (Exhibit 2E at pp. 2-3)." (Tr. 23). The ALJ also highlighted a November, 2010 examination where Ms. O'Brien "had full strength and normal deep tendon reflexes in the upper extremities (Exhibit 5F at p. 13)[,]"  and a June, 2011 examination

*O'Brien v. Colvin*
Civil No. SAG-16-114
November 18, 2016
Page 3

following carpal tunnel surgery that found Ms. O'Brien's incision "well healed … [with] no signs of infection, redness, drainage or edema and only mild pillar tenderness" and a hand and wrist that "tolerated a full range of motion … and had normal tendon function and sensation (Exhibit 12F at p. 23)." (Tr. 24).  The ALJ went on to note an April, 2012 examination where Ms. O'Brien "was noted to have normal muscle bulk, strength, and tone in the upper extremities, with intact sensation and normal coordination (Exhibit 5F at p. 51).  No restriction of range of motion was noted at that time." *Id.*  Ms. O'Brien "did not complain of right hand or shoulder problems in May 2012 (Exhibit 6F)" and "[i]n mid-October 2012 she stated that she had 'done well' since the brain surgery (Exhibit 13F at p. 4)." *Id.*  As to Ms. O'Brien's headaches and brain surgery, the ALJ remarked that "the record reveals that the claimant's allegedly disabling headaches were present at approximately the same level of severity prior to the alleged onset date except for the date the aneurysm was diagnosed" and that "[t]he claimant testified that she always had headaches throughout her adult life." (Tr. 24-25).  In particular, the ALJ reasoned that "[t]he fact that the allegedly disabling headaches did not prevent the claimant from working prior to the alleged onset date strongly suggests that it would not have prevented work prior to the date last insured" and went on to cite evidence in the record from June, 2006 through October, 2012 reflecting Ms. O'Brien suffering minimal, if any, discomfort from persistent headaches.  (Tr. 25).  The ALJ also discussed a neurological exam showing results "within normal limits" following Ms. O'Brien's brain surgery for aneurysm in 2006, and no "neurological or motor deficits (Exhibit 1A)." *Id.*

The ALJ also considered at length the extent to which medication ameliorated any limitations stemming from Ms. O'Brien's severe impairments.  For example, the ALJ explained that "the record shows that the prescribed pain medication is effective when she takes it, but she does not always take it." (Tr. 26).  The ALJ also noted that, in 2005, Ms. O'Brien chose to take hydrocodone "'sparingly,' suggesting that she was not in that much pain at that time (Exhibit 9F at p. 13)[,]" and that, in June, 2006, Tylenol provided sufficient relief from her headaches. *Id.*  In April, 2012, Ms. O'Brien reported "that hydrocodone helped with her neck pain and headaches (Exhibit 5F at p. 50)." *Id.*  The ALJ noted that Ms. O'Brien pursued treatment for symptom relief from her impairments inconsistently, and sometimes not at all, between 1998 and 2006 (Tr. 26-27).  The ALJ took special note of the inconsistency between Ms. O'Brien's claim of "constant pounding headaches" during the hearing and evidence to the contrary in the medical evidence of record. (Tr. 27).  As to carpal tunnel pain, the ALJ noted that Ms. O'Brien did not visit her treating neurosurgeon, Dr. Jamaris, "between November 2009 and December 2010, which is consistent with his opinion that she 'did quite well initially and had resolution of all of her arm symptoms and the majority of her neck and shoulder pain' (Exhibit 3F at p. 4)." (Tr. 27).  Indeed, in April, 2013, Dr. Jamaris continued to prescribe only "conservative treatment" to address the symptoms of Ms. O'Brien's impairments. *Id.*

Lastly, the ALJ discussed Ms. O'Brien's work history after the alleged disability onset date and the fact that Ms. O'Brien stated that she stopped working in February, 2005 "in part due to unspecified 'other reasons.'" *Id.*

*O'Brien v. Colvin*
Civil No. SAG-16-114
November 18, 2016
Page 4

Based on the above review and analysis of the medical evidence of record, the ALJ concluded that Ms. O'Brien's condition "has been steadily improving rather than declining … which is consistent with the residual functional capacity assessed herein." (Tr. 29). Ms. O'Brien's claim that the ALJ failed to consider limitations stemming from her severe impairments of intracranial injury and carpal tunnel syndrome is contradicted by the ALJ's thorough analysis of the record, as summarized above. Accordingly, I do not find remand on this point necessary.

## II.      Function-by-Function Assessment of RFC

Ms. O'Brien also unsuccessfully argues that the ALJ did not satisfy SSR 96-8p because she failed to include a function-by-function assessment of Ms. O'Brien's RFC. Pl.'s Mot. 9. "Exertional capacity addresses an individual's limitations and restrictions of physical strength and defines the individual's remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Here, in addition to evidence in the record cited by the ALJ in her discussion of Ms. O'Brien's RFC more broadly, the ALJ also plainly considered evidence of Ms. O'Brien's function-by-function capacity in light of her severe impairments. The ALJ cited the July, 2012 opinion of S. Rudin, M.D. and the December, 2012 opinion of S.K. Najar, M.D. that, "as of the date of last insured, the claimant could lift and carry 20 pounds occasionally and only ten pounds frequently; never climb ladders, ropes, or scaffolds; and only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs." (Tr. 25). Both opinions explicitly considered Ms. O'Brien's history of aneurysm and her related brain surgeries. *Id.* Dr. Najar further concluded "that the evidence appears consistent overall with the residual functional capacity." *Id.* In March, 2013, Tom Dees, M.D. affirmed Dr. Najar's opinion, and further opined that "the medical evidence of record failed to establish any significant worsening of her symptoms or functioning (Exhibit 7F)." *Id.* The ALJ also noted the July, 2012 opinion of Todd Giardina, Ph.D. who, after reviewing the record for the State agency, opined "that, as of the date of last insured, the claimant had only mild limitations in activities of daily living; only mild limitations in social functioning; only mild limitations in concentration, persistence and pace; and no episodes of decompensation of extended duration." (Tr. 25-26). Maurice Prout, Ph.D. opined identically in January, 2013, and his opinion was further affirmed by Alvin Smith, Ph.D. in March, 2013. (Tr. 26). Both Drs. Prout and Smith noted "no significant worsening of [Ms. O'Brien's] symptoms or functioning." *Id.* The ALJ further noted that Ms. O'Brien "admitted during the hearing that she sometimes goes food shopping alone and cooks since the alleged onset date. She also admitted that she goes out and walks in her yard every day and that she can stand/walk a total of four hours in an 8-hour day and sit four hours total in an 8-hour day." (Tr. 28). Additional medical evidence of record revealed that Ms. O'Brien "walked with a normal gait" upon examination in February, 2005; "ambulat[ed] independently without difficulty" during evaluation by physical and occupational therapy in May, 2006; reported performing normal activities of daily living during examinations in 2006 and 2010, and had no numbness, weakness, and pain during various examinations in 2011 and 2012. *Id.*

*O'Brien v. Colvin*
Civil No. SAG-16-114
November 18, 2016
Page 5

Ultimately, after considering the above function-by-function opinion and other medical evidence, the ALJ set out restrictions on Ms. O'Brien's ability to climb ladders, ropes, or scaffolds, and restricted the frequency of postural activities consistent with Ms. O'Brien's credible and evidence-supported functional limitations. Because the above narrative sufficiently constitutes the function-by-function assessment required by SSR 96-8p, remand is not required.

For the reasons set forth above, Ms. O'Brien's Motion for Summary Judgment (ECF No. 13) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 16) is GRANTED. Pursuant to sentence four of 42 U.S.C. § 405(g), the Commissioner's judgment is AFFIRMED. The Clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge